**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

TEXAS ENVIRONMENTAL JUSTICE
ADVOCACY SERVICES, AIR ALLIANCE
HOUSTON, CONCERNED CITIZENS OF ST.
JOHN, ENVIRONMENTAL DEFENSE FUND,
ENVIRONMENTAL INTEGRITY PROJECT,
LOUISIANA ENVIRONMENTAL ACTION
NETWORK, NATURAL RESOURCES
DEFENSE COUNCIL, INC., and RISE ST.
JAMES LOUISIANA,

                 *Plaintiffs*,

       v.

DONALD TRUMP, President of the United
States, in his official capacity, LEE ZELDIN, in
his official capacity as U.S. Environmental
Protection Agency Administrator, and U.S.
ENVIRONMENTAL PROTECTION AGENCY,

                 *Defendants*.

Case No. 1:25-cv-3745

**BRIEF OF AMICI CURIAE AMERICAN CHEMISTRY COUNCIL
AND AMERICAN FUEL & PETROCHEMICAL MANUFACTURERS
IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rules of Civil Procedure Rule 7.1, Amici American Chemistry Council ("ACC") and American Fuel & Petrochemical Manufacturers ("AFPM") make the following disclosures:

1.    ACC states that it is a national trade association that represents the business of chemistry. It is a non-profit, tax-exempt organization incorporated in the District of Columbia. ACC has no parent corporation, and no publicly held company owns 10% or more of the organization.

2.    AFPM states that it is a national trade association that represents American refining and petrochemical companies. It is a non-profit, tax-exempt organization incorporated in the District of Columbia. AFPM has no parent corporation, and no publicly held company owns 10% or more of the organization.

## TABLE OF CONTENTS

Corporate Disclosure Statement......................................................................... ii

Identity And Interest of Amici Curiae.................................................................1

Introduction And Summary of The Argument ....................................................3

Argument ............................................................................................................4

    I.      The President acted under explicitly delegated statutory authority. ........................4

           A.     Courts lack authority to review the President's discretionary
                    exercise of delegated statutory power. ...........................................5

           B.     The procedural requirements in Section 7607
                    of the Clean Air Act do not apply to presidential
                    determinations under Section 7412(i)(4). .................................13

    II.     Neither the Clean Air Act nor the Administrative Procedure Act
           authorize judicial review of the Proclamation. ......................................15

           A.     The Clean Air Act does not authorize judicial
                    review of the Proclamation. ........................................................16

           B.     The Administrative Procedure Act does not authorize
                    judicial review of the Proclamation. ...........................................17

Conclusion .........................................................................................................19

Certificate of Service .........................................................................................20

Certificate of Compliance ..................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Acker v. EPA*,
290 F.3d 892 (7th Cir. 2002) ................................................................16

*Alexander v. Sandoval*,
532 U.S. 275 (2011) ..............................................................................5

*Am. Road & Transp. Builders Ass'n v. EPA*,
865 F. Supp. 2d 72 (D.D.C. 2012) .......................................................15

*Armstrong v. Exceptional Child Ctr., Inc.*,
575 U.S. 320 (2015) ............................................................................18

*Califano v. Sanders*,
430 U.S. 99 (1977) ................................................................................5

*Chamber of Com. v. Reich*,
74 F.3d 1322 (D.C. Cir. 1996) .............................................9, 10, 11, 13

*Dalton v. Specter*,
511 U.S. 462 (1994) ......................................................................17, 18

*Detroit Int'l Bridge Co. v. Canada*,
189 F. Supp. 3d 85 (D.D.C. 2016) .......................................................17

*Franklin v. Massachusetts*,
505 U.S. 788 (1992) ....................................................4, 6, 9, 17, 18

*Glob. Health Council v. Trump*,
153 F.4th 1 (D.C. Cir. 2025) .........................................................6, 7, 12

*Holder v. Humanitarian L. Project*,
561 U.S. 1 (2010) ................................................................................12

*Int'l Union, Sec., Police & Fire Profs. v. Faye*,
828 F.3d 969 (D.C. Cir. 2016) ..............................................................5

*Kokkonen v. Guardian Life Ins. Co.*,
511 U.S. 375 (1994) ..............................................................................5

*Leatherman v. Tarrant Cnty. Narcotics Intel. & Coordination Unit*,
507 U.S. 163 (1993) ............................................................................16

*Leedom v. Kyne*,
    358 U.S. 184 (1958) ........................................................................................6, 7

*Mountain States Legal Found. v. Bush*,
    306 F.3d 1132 (D.C. Cir. 2002) ..............................3, 5, 6, 7, 10, 11, 12

*Nixon v. Fitzgerald*,
    457 U.S. 731 (1982) ...........................................................................................5

*NRDC v. Dep't of State*,
    658 F. Supp. 2d 105 (D.D.C. 2009) ............................................................17

*Nuclear Regul. Comm'n. v. Texas*,
    605 U.S. 665 (2025) ........................................................................................6, 7

*Oklahoma v. EPA*,
    605 U.S. 609 (2025) .........................................................................................16

*Sale v. Haitian Ctrs. Council, Inc.*,
    509 U.S. 155 (1993) .........................................................................................12

*Sierra Club v. Jackson*,
    813 F. Supp. 2d 149 (D.D.C. 2011) ......................................................15, 17

*Sierra Club v. Jackson*,
    833 F. Supp. 2d 11 (D.D.C. 2012) ...............................................................16

*Trump v. Hawaii*,
    585 U.S. 667 (2018) .....................................................................................5, 12

*Trump v. United States*,
    603 U.S. 593 (2024) .......................................................................................5, 8

*TRW Inc. v. Andrews*,
    534 U.S. 19 (2001) ............................................................................................14

*Tulare Cnty. v. Bush*,
    185 F. Supp. 2d 18 (D.D.C. 2001) ..................................................................8

*United States v. George S. Bush & Co.*,
    310 U.S. 371 (1940) ...........................................................................................8

*Youngstown Sheet & Tube Co. v. Sawyer*,
    343 U.S. 579 (1952) .........................................................................................12

*Zivotofsky ex rel. Zivotofsky v. Kerry*,
    576 U.S. 1 (2015) .............................................................................................12

**Statutes and Regulations**

60 Fed. Reg. 13023 (Mar. 10, 1995),
 https://perma.cc/B3DV-HNUM ............................................................................10

90 Fed. Reg. 34587 (July 17, 2025),
 https://perma.cc/372Y-73LL ..................................3, 4, 6, 8, 9, 10, 13, 14, 15, 16, 17, 18, 19

5 U.S.C. § 702 ....................................................................................................15, 17

42 U.S.C. § 7412(d) ................................................................................................13

42 U.S.C. § 7412(f) .................................................................................................13

42 U.S.C. § 7412(g) ................................................................................................13

42 U.S.C. § 7412(i)(4) ...........................3, 4, 5, 6, 7, 8, 9, 10, 11, 13, 14, 15, 17, 18, 19

42 U.S.C. § 7412(m) ...............................................................................................13

42 U.S.C. § 7412(n) ................................................................................................13

42 U.S.C. § 7607(b) ...............................................................................4, 15, 16, 17, 18

42 U.S.C. § 7607(d) .....................................................................................4, 13, 14, 15

42 U.S.C. § 7607(e) ................................................................................................16

**Other Authorities**

171 Cong. Rec. H3524-1 (Daily Ed. July 21, 2025) .................................................14

EPA, *List of Facilities Subject to the HON and Group I and Group II Polymers
 and Resins NESHAP* (Apr. 9, 2024), https://perma.cc/M84X-DMSR ................................3, 8

**IDENTITY AND INTEREST OF AMICI CURIAE[1]**

American Chemistry Council ("ACC") represents companies engaged in the business of chemistry—an innovative, multibillion-dollar business that is helping solve the biggest challenges facing our nation and the world. The business of chemistry drives innovations that enable a more sustainable future, creates hundreds of thousands of manufacturing and high-tech jobs that support families and communities, and enhances safety through the products of chemistry and investment in research. ACC members address these challenges by providing chemical, plastic, and polymer products and materials critical to the institutional, consumer, commercial, and industrial sectors of the U.S. economy. ACC is committed to improved environmental, health, safety and security performance through Responsible Care®; common sense advocacy addressing major public policy issues; and health and environmental research and product testing.

American Fuel & Petrochemical Manufacturers ("AFPM") is a national trade association representing nearly all U.S. refining and petrochemical manufacturing capacity. AFPM members support more than three million quality jobs, contribute to our economic and national security, and enable the production of thousands of vital products used by families and businesses throughout the United States.

Amici have a vital interest in promoting a predictable, rational, and fair legal environment for regulated entities. Amici have a strong interest in the proper interpretation of Clean Air Act § 112(i)(4), 42 U.S.C. § 7412(i)(4), which Congress enacted to provide the President with limited but essential authority to protect national interests when technological feasibility and security considerations make timely compliance impracticable. The challenged presidential proclamation,

---

[1] No party's counsel authored this brief in whole or in part, and no person, party, or party's counsel contributed money to fund the preparation or submission of the brief.

which was issued pursuant to clear statutory text, reflects precisely the type of discretionary, high-level judgment that Congress intentionally vested in the President.

Amici provide a unique industry-focused perspective and decades of experience with the underlying regulatory programs. ACC and AFPM frequently write amicus briefs and litigate cases brought under the Clean Air Act. Through this experience, Amici have developed substantial expertise on the statutory text, regulatory environment surrounding, and practical implications of the Clean Air Act.

## INTRODUCTION AND SUMMARY OF THE ARGUMENT

Congress, through Section 7412(i)(4) of the Clean Air Act, specifically authorized the President of the United States to "exempt any stationary source from compliance with any standard or limitation under this section for a period of not more than 2 years." 42 U.S.C. § 7412(i)(4). To make such an exemption, the President, in his discretion, must first determine that (1) "the technology to implement such standard is not available" and (2) "that it is in the national security interests of the United States to do so." *Id.*

On July 17, 2025, President Trump issued a proclamation pursuant to Section 7412(i)(4) providing exemptions from certain emissions standards or limitations under that section to fifty (out of about 200) sources for two years. Proclamation No. 10957, Regulatory Relief for Certain Stationary Sources To Promote American Chemical Manufacturing Security, 90 Fed. Reg. 34587 (July 17, 2025) (the "Proclamation"), https://perma.cc/372Y-73LL; EPA, *List of Facilities Subject to the HON and Group I and Group II Polymers and Resins NESHAP* (Apr. 9, 2024), https://perma.cc/M84X-DMSR. In the Proclamation, the President made both required determinations for each source and limited the exemption to two years. 90 Fed. Reg. at 34587.

Plaintiffs now challenge the Proclamation and ask this Court to review the President's discretionary judgments. *See* ECF 1 ("Compl."). But judicial review of presidential actions here is highly circumscribed. Courts may, at most, ask whether the President acted within the "discernible limits" of the statute. *See, e.g.*, *Mountain States Legal Found. v. Bush*, 306 F.3d 1132, 1136 (D.C. Cir. 2002). The President plainly did so. Section 7412(i)(4) authorizes the President to grant exemptions upon two determinations and for a limited duration. The Proclamation makes those determinations on its face. Plaintiffs' objections go to the correctness or sufficiency of the President's discretionary judgments under Section 7412(i)(4)—matters that are not judicially

3

reviewable and cannot render the President's actions *ultra vires*. Plaintiffs' claims that the Proclamation failed to comply with the procedural requirements listed in Section 7607(d) of the Clean Air Act similarly fail. Those procedural requirements expressly and only apply to specified categories of EPA rulemakings and actions taken by the EPA Administrator. None are at issue.

Plaintiffs' amorphous reliance on the Clean Air Act and Administrative Procedure Act ("APA") only confirms no judicial review is available here. The Clean Air Act's judicial-review provision, 42 U.S.C. § 7607(b), applies only to "final action[s] of the Administrator." It does not authorize judicial review of presidential proclamations issued pursuant to Section 7412(i)(4). Further, the Supreme Court has squarely held that the President is not an "agency" subject to the APA and here, given Section 7412(i)(4)'s text, courts may not review the President's actions under that statute's arbitrary and capricious standard of review. *See Franklin v. Massachusetts*, 505 U.S. 788, 800-01 (1992).

## ARGUMENT

The complaint must be dismissed. First, the President acted entirely within his statutory authority. Second, neither the Clean Air Act nor the APA authorizes judicial review of the presidential proclamation.

## I.    The President acted under explicitly delegated statutory authority.

Plaintiffs' nonstatutory *ultra vires* claims fail because Plaintiffs point to no action by the President that falls completely outside the bounds of his authority. The President acted under express statutory authority, which provided him with exclusive discretion to exempt sources upon making certain findings. His actions were within his statutory authority, not *ultra vires*. Plaintiffs instead quibble with the factual basis for the President's discretionary determinations. But nothing authorizes this Court to review such discretionary findings by the President. Plaintiffs next attempt to graft procedural provisions from inapplicable sections of the Clean Air Act onto presidential

action under Section 7412(i)(4). But those requirements apply only to specified EPA actions, not to presidential exemptions issued under Section 7412(i)(4). Because the President acted entirely within his statutory authority, Plaintiffs' claims fail and must be dismissed.

### A.    Courts lack authority to review the President's discretionary exercise of delegated statutory power.

"Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree." *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994) (citations omitted). "Absent statutory intent to create a cause of action, none exists, and 'courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute.'" *Int'l Union, Sec., Police & Fire Profs. v. Faye*, 828 F.3d 969, 972 (D.C. Cir. 2016) (quoting *Alexander v. Sandoval*, 532 U.S. 275, 286-87 (2011)); *see also Califano v. Sanders*, 430 U.S. 99, 107 (1977) (holding that the APA does not confer subject-matter jurisdiction and that judicial review exists only where Congress has provided a statutory basis for review).

These jurisdictional limits apply with particular force to presidential actions. The Supreme Court has repeatedly emphasized that the President occupies a unique constitutional position, and that judicial review of his official conduct raises acute separation-of-powers concerns. *See Trump v. United States*, 603 U.S. 593, 608, 610 (2024); *Trump v. Hawaii*, 585 U.S. 667, 704 (2018); *Nixon v. Fitzgerald*, 457 U.S. 731, 749-57 (1982). Absent a clear statement from Congress authorizing judicial review, courts will not presume authority to second-guess how the President performs his statutory duties.

Courts have entertained *ultra vires* claims involving presidential action, but only in circumscribed circumstances. *See, e.g.*, *Mountain States*, 306 F.3d at 1136 (A court may review where "authorizing statute or another statute places discernible limits on the President's

discretion."). In these cases, courts have often only entertained review by proceeding on the assumption, rather than a considered holding, that presidential action is reviewable. *See id.* (explaining that in *Franklin*, the Court "assume[d] for the sake of argument that some claims that the President has violated a statutory mandate are judicially reviewable outside the framework of the APA").

And even in those cases where review proceeds, the standard is extraordinarily deferential. Courts evaluating *ultra vires* claims have applied a "strictly limited" standard of review, particularly when reviewing a nonstatutory *ultra vires* claim, like the one here. *See Nuclear Regul. Comm'n. v. Texas*, 605 U.S. 665, 681 (2025) ("NRC"). "To prevail on an ultra vires claim, the plaintiff must establish that (1) review is not expressly precluded by statute, (2) there is no alternative procedure for review of the statutory claim and (3) the challenged action is plainly in excess of [the agency's] delegated powers and contrary to a specific prohibition in the statute that is clear and mandatory." *Glob. Health Council v. Trump*, 153 F.4th 1, 20 (D.C. Cir. 2025) (citation and quotations omitted). Even more, "the prohibition at issue must confer rights upon the individual seeking ultra vires review." *Id.* (citing *Leedom v. Kyne*, 358 U.S. 184, 190 (1958)). A government official's action, let alone the President's, cannot be subject to nonstatutory *ultra vires* review unless he or she acts "entirely in excess of [] delegated powers and contrary to a *specific prohibition* in a statute." *NRC*, 605 U.S. at 681 (cleaned up).

As an initial matter, Plaintiffs' claims do not identify any right conferred on them by Section 7412(i)(4), nor do they point to any clear and mandatory statutory prohibition the President allegedly violated. Section 7412(i)(4) does not grant enforceable rights to third parties; it delineates the scope of the President's discretionary authority to grant temporary exemptions upon specified findings. Because the Proclamation makes those findings and does not exceed the statute's

temporal limit, Plaintiffs cannot plausibly allege that the President acted "plainly in excess of . . . delegated powers" or contrary to a specific statutory command. Compl. ¶ 165. Absent such a violation, and absent any rights to Plaintiffs conferred by the provision, nonstatutory *ultra vires* review is unavailable. *See Glob. Health Council*, 153 F.4th at 20; *Leedom*, 358 U.S. at 189-90.

Even assuming for the sake of argument that Plaintiffs plausibly alleged an *ultra vires* claim, a court's narrow review of the President's actions to determine whether they are *ultra vires* is only available where the statute places "discernible limits" on the President's discretion. *See Mountain States*, 306 F.3d at 1136. When there are discernible limits, the inquiry is confined to whether the President acted *within* the scope of the delegation, not whether he exercised that authority wisely or correctly. As such, any nonstatutory *ultra vires* challenge "is essentially a Hail Mary pass[;] . . . the attempt rarely succeeds." *NRC*, 605 U.S. at 681-82 (citation omitted); *see Glob. Health Council,* 153 F.4th at 20 (describing the extremely limited nature of nonstatutory *ultra vires* review).

Here, Section 7412(i)(4) arguably contains facial discernible limits. The President must determine that the technology necessary to comply with the relevant standard is not available. 42 U.S.C. § 7412(i)(4). He also must determine the exemption is in the interest of national security. *Id*. And he must limit exemptions to "no more than 2 years." *Id.* But the statute only requires that that the President make these determinations; it does not require that a court agree with the determinations. At most, a court reviewing for *ultra vires* conduct could ask whether the President expressly made the required determinations and whether the exemption exceeds two years, not whether his determinations were correct.

In any event, the Proclamation satisfies these facial requirements. It expressly states the President determined that technology to comply with the relevant standards is unavailable and that

exemptions serve national security interests. 90 Fed. Reg. at 34587. And it limits all exemptions to two years. *Id*. The Complaint does not and cannot allege the Proclamation fails to make these determinations or exceeds the two-year limit.

Importantly, the presence of discernible limits does not open the door to judicial review of the President's underlying discretionary judgments. The factual determinations supporting a presidential finding—such as the availability of technology or what is in the United States' national security interests—lie at the core of executive discretion and are thus unreviewable. *See Tulare Cnty. v. Bush*, 185 F. Supp. 2d 18, 24-25 (D.D.C. 2001) ("It has long been held that where Congress has authorized a public officer to take some specified legislative action[,] when in his judgment that action is necessary or appropriate to carry out the policy of Congress, the judgment of the officer as to the existence of the facts calling for that action is not subject to review." (quoting *United States v. George S. Bush & Co.*, 310 U.S. 371, 380 (1940))). This is particularly true here, where the President made determinations for the fifty exempted sources out of approximately 200 covered facilities. 90 Fed. Reg. at 34587; EPA, *List of Facilities Subject to the HON and Group I and Group II Polymers and Resins NESHAP*, *supra* p.3. That is because "[o]nce it is determined that the President acted within the scope of his exclusive authority, his discretion in exercising such authority cannot be subject to further judicial examination." *Trump v. United States*, 603 U.S. at 608. The question for *ultra vires* review is whether the President acted outside the bounds of his authority, not whether he acted wisely within them. Because Section 7412(i)(4) commits technology and national security determinations to the President's discretion, challenging the correctness or factual support for those determinations falls outside the scope of permissible judicial review.

Accordingly, Plaintiffs' invitation for this Court to scrutinize the validity of and process underlying the President's discretionary judgments in exempting certain stationary sources under Section 7412(i)(4), *see* Compl. ¶¶ 154-55, 160, 179, 181, is wholly improper. Plaintiffs may disagree with the President's decisions, but their attempted nonstatutory *ultra vires* claim must begin and end with whether the President made the two determinations listed in Section 7412(i)(4) and limited the exemption to two years. The Complaint does not and cannot allege that the Proclamation exceeded those discernible limits. The President's decisions and actions here were within his authority.

Were courts permitted to probe the reasoning, evidentiary basis, or decision-making process underlying a President's discretionary determinations—despite Congress's deliberate choice not to impose procedural requirements, *see* 42 U.S.C. § 7412(i)(4)—litigants could obtain indirectly what they are barred from pursuing directly. The Supreme Court has already held that this kind of APA-like searching review does not apply to discretionary actions of the President. *See Franklin*, 505 U.S. at 800-01. Allowing Plaintiffs' end-run around these settled limits would subject every presidential determination to de facto arbitrary-and-capricious review under the guise of *ultra vires* scrutiny. Precisely what *Franklin* forbids.

None of the cases Plaintiffs cite in their Complaint support the notion that deeper review of the Proclamation is available. *See* Compl. ¶ 126. Those cases either *assumed without deciding* that a challenge could proceed, *see Chamber of Commerce v. Reich*, 74 F.3d 1322, 1331 n.4 (D.C. Cir. 1996); involved materially different circumstances (most notably, actions taken by subordinate executive officials pursuant to presidential directives), *see id.*; or involved facial challenges to whether the President had any statutory authority at all, *Mountain States*, 306 F.3d at 1138 (rejecting Plaintiff's facial challenge of certain presidential proclamations and noting how

that challenge "misses the mark"). None involved an effort to second-guess how the President exercised discretion Congress expressly delegated to him.

For example, in *Chamber of Commerce v. Reich*, the appellants challenged an executive order issued by President Clinton "barring the federal government from contracting with employers who hire permanent replacements during a lawful strike." 74 F.3d at 1324. The order did not operate autonomously. It charged the Secretary of Labor with implementing and enforcing the order and directed the Secretary to "make findings" and to investigate federal contractors. *Id.* at 1324-25; *see* Exec. Order No. 12954, Ensuring the Economical and Efficient Administration and Completion of Federal Government Contracts, 60 Fed. Reg. 13023 (Mar. 10, 1995), https://perma.cc/B3DV-HNUM. The executive order thus specifically directed agency action, including the promulgation of regulations. *See Reich*, 74 F.3d at 1324-25; 60 Fed. Reg. at 13024.

Notably, the Court did not "bring judicial power to bear directly on the President," explaining that the Supreme Court has been reluctant to do so and that instead, in *Reich*, the court was "concerned with the long established non-statutory review of a claim directed at a subordinate executive official." *See* 74 F.3d at 1331 n.4. The Court knew that it was foreclosed from reviewing certain claims "based on an abuse of discretion by the President." *Id.* at 1331.

That is not the case here. The Proclamation here operates by its own force under Section 7412(i)(4). There are no implementing regulations, no agency orders, and no further administrative actions to take. A future statement by EPA, if any, would be purely ministerial recognition of exemptions that already exist by operation of law. *See* § 7412(i)(4). Moreover, Plaintiffs ask this Court to directly review discretionary actions of the President.

Even more, *Reich* involved an alleged contravention of a specific statutory prohibition. The National Labor Relations Act directly barred the conduct the agencies were ordered to undertake.

*Id.* at 1332. The court's analysis repeatedly emphasized that the executive order conflicted with express congressional commands. *See id.* Here, by contrast, Section 7412(i)(4) affirmatively authorizes exactly what the President did. Plaintiffs identify no conflict with any applicable statutory provision.

*Mountain States* does not help Plaintiffs either. There, the court dismissed a challenge to the President's authority under the Antiquities Act to designate land as a national monument. *Mountain States*, 306 F.3d at 1136. The court explained that the presidential Proclamations at issue were not in excess of the President's statutory authority because they complied with the requirements of the Antiquities Act by "identif[ying] particular objects or sites of historic or scientific interest and recite[d] grounds for the designation that comport with the Act's policies and requirements." *Id.* at 1137. Because the plaintiffs presented no facts showing that the President "acted beyond his authority under the Antiquities Act," the court declined to engage in any further substantive *ultra vires* review. *Id.*

While the court noted that the lack of factual allegations suggesting that the President exceeded his authority was important to that case, the court did not, as Plaintiffs seem to suggest, endorse judicial review of presidential fact finding. The factual determinations that *Mountain States* indicates (in dicta) may be reviewable are those bearing on whether the President failed to satisfy a statutory prerequisite (such as neglecting to make a required finding) or violated another statutory command. *See id.* The court contrasted review of presidential action under statutes that impose discernible limits with statutes that provide no limits at all. *See id.* at 1136. Where there are discernible limits, the court explains, courts may ensure that the President made the determinations the statute requires. *See id.* But courts may not second guess the correctness of the President's discretionary determinations.

*Trump v. Hawaii*, which postdates *Mountain States*, reinforces this point. There, the Supreme Court rejected the argument that courts could demand a detailed explanation of the President's fact finding or conduct a searching inquiry into the sufficiency of the President's justifications. 585 U.S. at 686. The Court held that where Congress grants the President discretionary authority conditioned on a finding, courts may not second-guess "[w]hether the President's chosen method" is justified as a matter of policy. *Id.* (quoting *Sale v. Haitian Ctrs. Council, Inc.*, 509 U.S. 155, 187-88 (1993)). Nor is the President required to "conclusively link all of the pieces in the puzzle" before courts defer to his judgment. *Id.* at 686-87 (quoting *Holder v. Humanitarian L. Project*, 561 U.S. 1, 35 (2010)).

Finally, *Mountain States* must be read against the broader separation-of-powers backdrop. Where the President acts pursuant to express congressional authorization, presidential authority is at its apex. *See Zivotofsky ex rel. Zivotofsky v. Kerry*, 576 U.S. 1, 10 (2015) (citing *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 635-38 (1952) (Jackson, J., concurring)). Just last year, the United States Court of Appeals for the District of Columbia confirmed this. Addressing a claim that the President acted *ultra vires*, the court held that where the governing statute authorizes executive action "subject to certain procedures and restrictions," and plaintiffs cannot identify a specific statutory prohibition violated "to an extreme and nearly jurisdictional degree," an *ultra vires* claim cannot succeed. *Glob. Health Council*, 153 F.4th at 20.

This Court therefore may not probe the validity of the President's factual determinations under Section 7412(i)(4), the sufficiency of the evidence he considered under that section, or the manner in which he exercised discretion Congress expressly entrusted to him in Section 7412(i)(4). As the D.C. Circuit made clear in *Reich*, courts may not "bring judicial power to bear directly on the President," and they are foreclosed from reviewing claims "based on an abuse of discretion by

the President." 74 F.3d at 1331 & n.4. That settled limitation forecloses precisely the kind of searching review of discretionary presidential actions Plaintiffs seek here.

**B.     The procedural requirements in Section 7607 of the Clean Air Act do not apply to presidential determinations under Section 7412(i)(4).**

Plaintiffs' claims that the President acted *ultra vires* because the Proclamation did not comply with the procedural requirements listed in Section 7607 of the Clean Air Act fail because those procedural requirements are inapplicable. *See* Compl. ¶¶ 6, 32-34, 171-73. Section 7607(d) applies only to a very particular list of "Rulemaking" taken by the EPA Administrator, not presidential exemptions under Section 7412(i)(4).

Plaintiffs cite various requirements in Section 7607(d) and (h), *see* Compl. ¶¶ 6, 32-33, 172-73, all of which only apply to rulemaking as delineated in Section 7607(d)(1). Section 7607(d)(1) provides an extraordinarily specific list of actions to which it applies. Those actions include the promulgation or revision by "*the Administrator*" of various rules, standards, limitations, and plans under specifically listed sections of the Act. 42 U.S.C. § 7607(d)(1) (emphasis added). Absent from this extensive list is any reference to the President or to Section 7412(i)(4). In fact, Section 7607(d) specifically references EPA actions taken under five subsections of Section 7412: "the promulgation or revision of any . . . emission standard or limitation under section 7412(d), . . . any standard under section 7412(f), . . . or any regulation under section 7412(g)(1)(D) and (F), . . . or any regulations under section 7412(m) or (n)." *Id.* § 7607(d)(1)(C). But it never once mentions Section 7412(i)(4) or the President . Even the catch-all provision at the end of Section 7607(d) applies only to "such other actions as *the Administrator* may determine." 42 U.S.C. § 7607(d)(1)(V) (emphasis added). The level of specificity used in Section 7607(d) shows that Congress was more than capable of identifying the sections of the Act to which it intended the procedural requirements to apply and instead chose to omit such

13

requirements for presidential exemption decisions. *See, e.g.*, *TRW Inc. v. Andrews*, 534 U.S. 19, 28 (2001) (explaining that "[w]here Congress explicitly enumerates certain" statutory exceptions or, here, requirements, additional exceptions or requirements "are not to be implied" (citation omitted)); *see also infra* p.16. This Court simply may not expand Section 7607(d)'s reach to encompass presidential action where Congress conspicuously declined to do so.

The detailed requirements for rulemaking by the Administrator in Section 7607(d) stand in stark contrast to the broad discretion granted the President in Section 7412(i)(4). That provision imposes no statutory requirements typical of regulatory action at all. 42 U.S.C. § 7412(i)(4). There are no notice-and-comment requirements, no obligations to compile an administrative record, and no requirements to provide a reasoned explanation. *See id.* The statute instead requires only that the President make the required findings and report each exemption to Congress, which is precisely what occurred here. *Id.*; *see* 171 Cong. Rec. H3524-1 (Daily Ed. July 21, 2025).

Plaintiffs next point to 7607(d)(7)(B)'s stay provision, alleging that the Proclamation conflicts with its limitations. *See* Compl. ¶¶ 34, 171. But Plaintiffs' reliance on that provision is also mistaken. Section 7607(d)(7)(B) provides general authority for "the Administrator" or "the court" to issue an up to three-month stay of certain EPA actions after the Administrator commences a reconsideration proceeding. Again, the Proclamation is not an *EPA action*. It is a compliance exemption issued by the President under the explicit authority Congress provided him in Section 7412(i)(4). A stay under Section 7607(d)(7)(B) and a Presidential Exemption under Section 7412(i)(4) are two entirely different actions, that apply in entirely different situations, to entirely different actors. *See, e.g.*, *Sierra Club v. Jackson*, 813 F. Supp. 2d 149, 158-59 (D.D.C. 2011) (explaining that the EPA has discretion in some cases to choose between Clean Air Act or APA

14

stay provisions, but that choice has consequences because the statutes are different and require different timelines and procedures).

In short, Plaintiffs cannot graft procedural requirements applicable only to an express set of actions taken by *the Administrator* onto a self-executing action *taken by the President*. The President acted fully within his statutory authority under Section 7412(i)(4), and the procedural provisions Plaintiffs invoke are simply inapplicable.

## II.    Neither the Clean Air Act nor the Administrative Procedure Act authorize judicial review of the Proclamation.

The lack of judicial review here is further supported by the absence of any means for review under the Clean Air Act's exhaustive judicial review provision and the APA's more general review of final agency action. The Clean Air Act only authorizes judicial review of specified final actions taken by the EPA Administrator. 42 U.S.C. § 7607(b). Congress conspicuously omitted any review mechanism for self-executing presidential exemptions issued under Section 7412(i)(4). The APA likewise provides no basis for review because the President is not an "agency," and Congress provided no statutory authority for a court to apply APA scrutiny to the President's decisions.[2] *See* 5 U.S.C. § 702.

---

[2] While Plaintiffs do not invoke the APA as a basis for review, *see* Compl. ¶¶ 8-10, Amici address that statute, nonetheless. Plaintiffs challenge the Clean Air Act exemption in a federal district court, even though the Clean Air Act's judicial review provision filters reviewable actions (which the Proclamation is not) to the court of appeals. *See* 42 U.S.C. § 7607(b)(1)*; Am. Road & Transp. Builders Ass'n v. EPA*, 865 F. Supp. 2d 72, 75 (D.D.C. 2012) (explaining that "only the courts of appeals may review final action taken under the Clean Air Act"). Plaintiffs appear to borrow from the APA's residual review provisions to justify district-court jurisdiction because they ask this Court to review the validity of the President's determinations and impose administrative procedures on the President. *See* Compl. ¶¶ 152-67

**A.      The Clean Air Act does not authorize judicial review of the Proclamation.**

The Clean Air Act's judicial review provision, Section 7607(b), applies only to final "action[s] of the *Administrator*," not to actions of the President. *See* 42 U.S.C. § 7607(b) (emphasis added). Specifically, Section 7607(b), allows the public to file petitions for review of a select set of actions *"taken[] by the Administrator*" in the U.S. Court of Appeals for the D.C. Circuit. *Id.* § 7607(b)(1) (emphasis added). It allows for review of another specific set of "the *Administrator's* action[s]" in the "United States Court of Appeals for the appropriate circuit." *Id.* (emphasis added); *Oklahoma v. EPA*, 605 U.S. 609, 614 (2025) (explaining which actions are reviewable in the regional circuits). Notably absent, is any mention of the President. 42 U.S.C. § 7607(b)(1).

Congress's omission of any action by the President in the Clean Air Act's judicial-review provision is telling. Under the canon *expressio unius est exclusio alterius*, Congress's identification of specific actions by the Administrator in the judicial review provision, by implication here, means that Congress has excluded review of actions by others, including the President. *See Leatherman v. Tarrant Cnty. Narcotics Intel. & Coordination Unit*, 507 U.S. 163, 168 (1993); *Sierra Club v. Jackson*, 833 F. Supp. 2d 11, 25-26 (D.D.C. 2012) (applying the *expressio unius est exclusio alterius* canon to a provision of the Clean Air Act). Indeed, other courts have recognized that judicial review under Section 7607(b) is limited to the express categories of EPA actions listed in the provision. *See, e.g.*, *Acker v. EPA*, 290 F.3d 892, 894 (7th Cir. 2002) (explaining that judicial review under the Clean Air Act is limited to the "enumerated actions" in Section 7607(b)). And the Clean Air Act itself further recognizes this limitation in other provisions. *See* 42 U.S.C. § 7607(e) ("Nothing in this chapter shall be construed to authorize judicial review of regulations or orders of the Administrator under this chapter, except as provided in this section"). Considering the specificity Congress used to identify which actions it was

subjecting to judicial review, its silence about any review of any Presidential action in either Section 7607(b) or Section 7412(i)(4) speaks volumes.

**B.    The Administrative Procedure Act does not authorize judicial review of the Proclamation.**

The APA could not help Plaintiffs either. That statute guarantees a right of review of final "agency action." 5 U.S.C. § 702; *Sierra Club*, 813 F. Supp. 2d at 156 (exercising jurisdiction in the district court to review a claim against EPA that the court determined was brought under the APA rather than the Clean Air Act). But the APA does not apply here because the President is not an "agency" as defined by the APA. *See Dalton v. Specter*, 511 U.S. 462, 468-70 (1994); *Franklin*, 505 U.S. at 800-01 (holding that the President's "actions are not subject to [APA] requirements").

*Franklin v. Massachusetts* is dispositive on this point. There, the Supreme Court held that the President's discretionary actions are not reviewable under the APA. 505 U.S. at 800-01; *see also Detroit Int'l Bridge Co. v. Canada*, 189 F. Supp. 3d 85, 99-100 (D.D.C. 2016) (collecting cases explaining that where Congress authorizes presidential actions, the President's discretionary actions under that authority are not reviewable under the APA). The Court emphasized that "out of respect for the separation of powers and the unique constitutional position of the President," courts will require "an express statement by Congress before assuming it intended the President's performance of his statutory duties to be reviewed for abuse of discretion." *Franklin*, 505 U.S. at 800-01; *see NRDC v. Dep't of State*, 658 F. Supp. 2d 105, 111-12 (D.D.C. 2009). No such statement appears in Section 7412(i)(4), and there is therefore no basis for reviewing the President's exercise of his statutorily authorized discretion.

While not explicit, Plaintiffs seem to be trying to graft the APA onto their claims against the President because the APA may apply to EPA action, if there were any final action by EPA. See Compl. ¶¶ 167, 169-74, 178, 180, 813. But, again, the exemption at issue is a self-executing

action by the President under Section 7412(i)(4). *See* 90 Fed. Reg. at 34587. And the Supreme Court has repeatedly explained that even where an agency has some role in advising the President, where "[t]he President, not the [agency] takes the final action," the action is not reviewable under the APA. *Dalton*, 511 U.S. at 470 (quoting *Franklin*, 505 U.S. at 799). That is exactly the case here: It is the President, not EPA who issued the Proclamation. There is no agency action to review.

Plaintiffs, perhaps recognizing that neither the Clean Air Act nor the APA provides a cause of action or basis for this Court's review, vaguely grasp onto this Court's federal question jurisdiction or "inherent equitable powers." *See* Compl. ¶¶ 8-10, 166.[3] But, as explained above, *see supra* p.5, federal courts have limited jurisdiction. Their authority to review an action by the President is extraordinarily limited where not specifically authorized by a statute.

*    *    *

The Clean Air Act does not authorize judicial review of the Proclamation because Section 7607(b) limits review to actions by the EPA Administrator, and Congress deliberately omitted any provision for reviewing presidential exemptions under Section 7412(i)(4). The APA likewise provides no basis for review: The Supreme Court has already explained that the President is not an "agency." Plaintiffs' effort to challenge whether the President's determinations were "supported" or "correct" is an impermissible attempt to smuggle APA arbitrary-and-capricious review into determinations that Congress expressly empowered the President to make for himself. Section 7412(i)(4) commits the determinations of technology availability and national security to

---

[3] Plaintiffs also reference to *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 326-27 (2015), Compl. ¶ 166, but that case is inapposite. Although *Armstrong* recognized that *in some circumstances* parties may seek injunctive relief to prevent unlawful actions by government officials, *see* 575 U.S. at 327, this case says nothing of the standard for *ultra vires* review or the unique rules surrounding courts review of the President.

the President's discretion, and thus the Proclamation is a self-executing exercise of expressly delegated authority.

In short, Plaintiffs ask this Court to do what no court has authority to do: second-guess the President of the United States' discretionary exercise of authority Congress expressly delegated to him.

## CONCLUSION

For the foregoing reasons the complaint must be dismissed.

Dated: February 5, 2026

Respectfully submitted,

Elliott Zenick
elliott_zenick@americanchemistry.com
655 New York Ave NW
Washington, DC 20001
(202) 249-6744

*Counsel for Amicus Curiae American Chemistry Council*

Tyler Kubik
tkubik@afpm.org
1800 M Street NW
 Suite 900 North
Washington, DC 20036
(202) 457-0480

*Counsel for Amicus Curiae American Fuel & Petrochemical Manufacturers*

*/s/ Michael B. Schon*
Michael B. Schon
mike@lkcfirm.com
LEHOTSKY KELLER COHN LLP
200 Massachusetts Avenue, NW
 Suite 700
Washington, DC 20001
(512) 693-8350

*Counsel for Amici Curiae American Chemistry Council and American Fuel & Petrochemical Manufacturers*

**CERTIFICATE OF SERVICE**

I hereby certify that on February 5, 2026, I served the foregoing with the Clerk of the Court by using the CM/ECF system. All participants in the case are registered CM/ECF users and will be served by the CM/ECF system.

*/s/ Michael B. Schon*
Michael B. Schon

**CERTIFICATE OF COMPLIANCE**

I hereby certify that the foregoing complies with: (1) the requirements of Local Civil Rule 7(o)(4) and does not exceed 25 pages; and (2) the typeface and type-style requirements of Local Civil Rule 5.1(d) because it has been prepared in a proportionally spaced typeface using Microsoft Word and 12-point Times New Roman font. I further certify that this brief complies with Local Civil Rule 7.1(o)(5) and Federal Rule of Appellate Procedure 29(a)(4).

*/s/ Michael B. Schon*
Michael B. Schon