**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| TEXAS ENVIRONMENTAL JUSTICE ADVOCACY SERVICES, et al., <br><br> Plaintiffs, <br><br> v. <br><br> DONALD TRUMP, et al., <br><br> Defendants. | Civil No. 1:25-cv-03745 |

**DEFENDANTS' REPLY MEMORANDUM IN SUPPORT
OF CROSS MOTION FOR SUMMARY JUDGMENT**

ADAM R.F. GUSTAFSON
Principal Deputy Assistant Attorney General
ROBERT N. STANDER
Deputy Assistant Attorney General
Environment & Natural Resources Division

CHARLOTTE M. GOUDEAU
Assistant Regional Counsel
EPA Region 6 Office of Regional
Counsel
Dallas, Texas

DANIEL J. MARTIN
LAURA BROWN
U.S. Department of Justice
Environment & Natural Resources Division
Environmental Defense Section
P.O. Box 7611
Washington, D.C. 20044
(202) 598-1869 (Martin)
(202) 305-5314 (Brown)
Daniel.Martin3@usdoj.gov
Laura.J.S.Brown@usdoj.gov

# Contents

TABLE OF AUTHORITIES...................................................................................................................ii

INTRODUCTION ........................................................................................................................... 1

ARGUMENT.................................................................................................................................... 2

    I.  The President's Exemptions Are Not Reviewable Here. .................................................... 2

    II.  The Undisputed Facts Support Defendants, Not Plaintiffs, Under the Correct
    Understanding of Ultra Vires Review for Presidential Action............................................ 3

        A.     Plaintiffs Cannot Show that the President Violated a Specific Prohibition in the
             Clean Air Act that Confers Rights Upon Them. ...................................................... 3

        B.     The President's Determination in the Proclamation that Technology Is
             Unavailable Is All that the Statute Required............................................................ 4

    III. Plaintiffs Cannot Obtain the Relief They Seek. .................................................................. 7

        A.     EPA Is Not a Proper Party. ....................................................................................... 7

        B.     The Court May Not Order Relief Against the President......................................... 8

CONCLUSION............................................................................................................................... 12

**TABLE OF AUTHORITIES**

**Cases**

*Abbott v. Abbott*,
    560 U.S. 1 (2010)...................................................................................................... 5

*Am. Sch. of Magnetic Healing v. McAnnulty*,
    187 U.S. 94 (1902)..................................................................................................... 4

*Arbaugh v. Y&H Corp.*,
    546 U.S. 500 (2006).................................................................................................. 8

*Armstrong v. Exceptional Child Ctr., Inc.*,
    575 U.S. 320 (2015).................................................................................................. 7

*Ass'n of Data Processing Serv. Orgs. v. Camp*,
    397 U.S. 150 (1970).................................................................................................. 3

*Biden v. Knight First Amendment Inst. at Columbia Univ.*,
    141 S. Ct. 1220 (2021)..................................................................................................

*Block v. Cmty. Nutrition Inst.*,
    467 U.S. 340 (1984).................................................................................................. 3

*Bourdon v. U.S. Dep't of Homeland Sec.*,
    940 F.3d 537 (11th Cir. 2019) ................................................................................. 5

*Citizens for Resp. & Ethics in Wash. v. FEC*,
    892 F.3d 434 (D.C. Cir. 2018) ............................................................................... 12

*City of New York v. Clinton*,
    985 F. Supp. 168 (D.D.C. 1998) ............................................................................. 9

*Clinton v. City of New York*,
    524 U.S. 417 (1998).............................................................................................. 8, 9

*Cooper Indus., Inc. v. Aviall Servs., Inc.*,
    543 U.S. 157 (2004).................................................................................................. 8

*Franklin v. Massachusetts*,
    505 U.S. 788 (1992)........................................................................................ 2, 8, 11

*Glob. Health Council v. Trump*,
    153 F.4th 1 (D.C. Cir. 2025) ................................................................................... 3

*Haaland v. Brackeen*,
   599 U.S. 255 (2023) .................................................................................................. 12

*Heckler v. Chaney*,
   470 U.S. 821 (1985) .................................................................................................. 12

*Knight First Amendment Inst. at Columbia University v. Trump*,
   302 F. Supp. 3d 541 (S.D.N.Y. 2018),
    *vacated on appeal as moot consistent with* 141 S. Ct. 1220 (2021) ........................................ 11

*Kreis v. Sec'y of Air Force*,
   866 F.2d 1508 (D.C. Cir. 1989) ................................................................................. 5

*Learning Res., Inc. v. Trump*,
   146 S. Ct. 628 (2026) ................................................................................................. 4

*Leedom v. Kyne*,
   358 U.S. 184 (1958) ................................................................................................... 4

*Loughrin v. United States,*
   573 U.S. 351 (2014) ................................................................................................... 6

*Marbury v. Madison*,
   5 U.S. 137 (1803) ..................................................................................................... 10

*Miller v. French*,
   530 U.S. 327 (2000) ................................................................................................... 7

*Mississippi v. Johnson*,
   71 U.S. (4 Wall) 475 (1866) .................................................................................... 11

*Nat'l Treasury Emps. Union v. Nixon,*
   492 F.2d 587 (D.C. Cir. 1974) ............................................................................ 10, 11

*Newdow v. Roberts*,
   603 F.3d 1002 (D.C. Cir. 2010) ................................................................................. 9

*NRC v. Texas*,
   605 U.S. 665 (2025) ................................................................................................... 4

*Swan v. Clinton*,
   100 F.3d 973 (D.C. Cir. 1996) .............................................................................. 8, 10

*Webster v. Fall*,
   266 U.S. 507 (1925) ................................................................................................... 8

iii

**Statutes**

42 U.S.C. § 7412(d)(6) ................................................................................................... 6

42 U.S.C. § 7412(i)(4) ................................................................................................... 1

42 U.S.C. § 7607 ........................................................................................................... 7

42 U.S.C. § 7607(b)(1) ................................................................................................. 6

42 U.S.C. § 7607(d)(9)(A) ............................................................................................ 6

**Legislative Materials**

H.R. Doc. No. 119-76 ................................................................................................... 4

**Other Materials**

Webster's New International Dictionary 711 (2d ed.1954) ............................................ 5

American Heritage Dictionary of the English Language 494 (5th ed. 2011) ................ 5

iv

**INTRODUCTION**

Our briefs in support of our Motion to Dismiss establish that the Clean Air Act's judicial review scheme bars review of the President's HON Proclamation. We also established that, even if the Clean Air Act does not bar review, the President's discretionary action exempting certain facilities from the HON standards is well within the authority Congress granted the President in the Clean Air Act and is, thus, unreviewable. And Plaintiffs lack standing to challenge the exemptions at the facilities where they do not allege a sufficient injury. That is sufficient to resolve this case, but we do not reprise those grounds for dismissal in this reply brief.

Instead, as we established in our cross-motion for summary judgment and further demonstrate below, the Court, if it declines to dismiss, should enter summary judgment in Defendants' favor. No genuine dispute exists that the President "determine[d]" "that the technology to implement [the HON standards] is not available and that it is in the national security interests of the United States" to exempt facilities from those standards for two years, as authorized by Clean Air Act Section 112(i)(4), 42 U.S.C. § 7412(i)(4). Moreover, Plaintiffs' disagreements with the President's discretionary determinations, if accepted as true, amount to mistakes of fact that are not subject to judicial review, not mistakes of law, as Plaintiffs claim. Courts cannot use ultra vires review to second-guess judgments committed to the President's discretion.

The issues in this case are strictly legal. Whether this Court has jurisdiction to review the President's determination is a question of law. And whether that determination is ultra vires is a pure question of law that turns on the plain language of Section 112(i)(4) as applied to the determinations contained within the four corners of the Presidential Proclamation. Plaintiffs cannot show that the Presidential Proclamation violated a specific prohibition in the Clean Air

1

Act that confers rights upon them, as they must to succeed on an ultra vires claim. And Plaintiffs cannot legitimately contend that the President did not make the requisite statutory determinations, which are self-evident on the face of the Proclamation. Finally, Plaintiffs cannot obtain the relief they seek.

The Court should grant Defendants' Cross Motion for Summary Judgment.

**ARGUMENT**

Below, we make three brief points in support of our Cross-Motion for Summary Judgment. These are that: (1) the presumption of judicial review does not apply here as Plaintiffs conceive it; (2) under the correct understanding of the scope of ultra vires review applicable here, the undisputed facts support Defendants; and (3) Plaintiffs cannot obtain the relief they seek in this action against EPA or the President.

## I.    The President's Exemptions Are Not Reviewable Here.

Plaintiffs' theory about the presumption in favor of judicial review is inconsistent with separation of powers principles recognized by the Supreme Court. Contrary to the usual clear and convincing evidence standard cited by Plaintiffs for subordinate officials, Dkt. No. 63 at 5, there is no such presumption when it comes to review of discretionary presidential actions. *Franklin v. Massachusetts*, 505 U.S. 788, 801 (1992) ("We would require an express statement by Congress before assuming it intended the President's performance of his statutory duties to be reviewed for abuse of discretion."). In fact, the opposite is true: "respect for the separation of powers and the unique constitutional position of the President" means that "textual silence is not enough" to subject presidential action to judicial review. *Id.* at 800–01. Plaintiffs' attempt to cabin *Franklin* to just the Administrative Procedure Act (APA) is not supported by the Court's reasoning in that case. *See* Dkt. No. 63 at 7.

2

Moreover, even if the clear and convincing evidence standard did apply here, the Supreme Court has explained that express statements from Congress are not required to make an action unreviewable; the bar is also met if "the congressional intent to preclude judicial review is 'fairly discernible in the statutory scheme.'" *Block v. Cmty. Nutrition Inst.*, 467 U.S. 340, 351 (1984) (quoting *Ass'n of Data Processing Serv. Orgs. v. Camp*, 397 U.S. 150, 157 (1970)). That is the case here, as we have explained in previous briefs.

Plaintiffs have thus failed to demonstrate congressional intent to subject the President's discretionary Section 112(i)(4) exemptions to judicial review.[1]

## II.    The Undisputed Facts Support Defendants, Not Plaintiffs, Under the Correct Understanding of Ultra Vires Review for Presidential Action.

### A.    Plaintiffs Cannot Show that the President Violated a Specific Prohibition in the Clean Air Act that Confers Rights Upon Them.

Plaintiffs contend that, even if the specific-prohibition requirement is the governing standard for ultra vires claims, the specific prohibition at issue need not confer rights on them. Dkt. No. 61 ("Pls.' Opp'n") at 5. That contention is incorrect.

Rights-conferring language is an essential subcomponent of the specific-prohibition requirement. As stated most plainly by the D.C. Circuit last year, "the prohibition at issue must confer rights upon the individual seeking ultra vires review." *Glob. Health Council v. Trump*, 153 F.4th 1, 20 (D.C. Cir. 2025) (citing *Leedom v. Kyne*, 358 U.S. 184, 190 (1958)). This subcomponent has been a feature of ultra vires jurisprudence for over 100 years. *See Am. Sch. of*

---

[1] *Learning Resources, Inc. v. Trump*, 146 S. Ct. 628 (2026), is not to the contrary. At issue in that case was whether Congress in the International Emergency Economic Powers Act authorized the President to impose tariffs, a question that raised clear separation of powers concerns. Here, Plaintiffs do not raise a separation of powers concern, nor do they contest that Congress gave the President authority to grant exemptions under the Clean Air Act. Instead, they seek review of the President's exercise of that authority, which review is unavailable for the reasons we have explained.

*Magnetic Healing v. McAnnulty*, 187 U.S. 94, 110 (1902) ("[C]ourts, therefore, must have power in a proper proceeding to grant relief . . . [against] a public and administrative officer, whose action is unauthorized by any law, and *is in violation of the rights of the individual*." (emphasis added)); *Kyne*, 358 U.S. at 190 (courts "cannot lightly infer that Congress does not intend judicial protection *of rights it confers* against agency action taken in excess of delegated powers" (emphasis added)). The Supreme Court repeated this point in *NRC*. *NRC v. Texas,* 605 U.S. 665, 680 (2025) (quoting *McAnnulty*, 187 U.S. at 110). And Plaintiffs' contrary argument—that the "right" at issue is simply the right to equitable relief—is not persuasive. No case holds as much, and *Global Health Council* states precisely the opposite. 153 F.4th at 20; *see also McAnnulty*, 187 U.S. at 110 ("In our view of these statutes the complainants had the *legal right, under the general acts of Congress relating to the mails*, to have their letters delivered at the post office as directed." (emphasis added)).

Plaintiffs must satisfy the rights-conferring standard to prove their ultra vires claim, but they have not done so.[2]

### B.    The President's Determination in the Proclamation that Technology Is Unavailable Is All that the Statute Required.[3]

Plaintiffs claim that "[s]imply stating 'I determine that technology is not available' without identifying a single technology or standard cannot be enough" to satisfy Section 112(i)(4) and that "[t]he context and content of the Proclamation establish that such determinations never actually took place." Pls.' Opp'n at 7-8. Plaintiffs are wrong. The Supreme

---

[2] This issue is not forfeited; the United States put the specific prohibition requirement squarely before the Court in its motion to dismiss, Dkt. No. 34-1 at 12, and in its cross-motion for summary judgment, Dkt. No. 59 at 13.

[3] Plaintiffs have not challenged the other requirement that the President report each exemption to Congress, nor can they. *See* H.R. Doc. No. 119-76.

Court has defined "determine" to mean "[t]o fix conclusively or authoritatively" or "[t]o set bounds or limits to" *Abbott v. Abbott*, 560 U.S. 1, 11 (2010) (quoting Webster's New International Dictionary 711 (2d ed.1954); *see also Bourdon v. U.S. Dep't of Homeland Sec.*, 940 F.3d 537, 542 (11th Cir. 2019) (defining "determine" as "establish or ascertain definitely, as after consideration, investigation, or calculation") (quoting the American Heritage Dictionary of the English Language 494 (5th ed. 2011). Thus, as used here, "determines" means that the President "fix[es] conclusively or authoritatively" or "establish[es] or ascertain[s] definitively" that the technology is unavailable, a standard the President undeniably met by setting forth his determination in the Proclamation. *Cf. Kreis v. Sec'y of Air Force*, 866 F.2d 1508, 1513 (D.C. Cir. 1989) ("The statutory provisions at issue here draw a similar distinction between the objective existence of certain conditions and the Secretary's determination that such conditions are present."). Plaintiffs' assertion that "determine" mandates some express or subjective analytical process, i.e., that the President was required to identify the technologies and explain why they are unavailable, Pls.' Opp'n at 8, goes well beyond what the statute's plain language requires.

Moreover, how the President made his discretionary determination cannot be separated from the determination itself. There is no reason to believe that Congress expected that the President's determination, or his underlying consideration, would be subject to judicial review. *See Bourdon*, 940 F.3d at 542 (explaining that "Congress, by choosing the verb 'determine'— rather than a noun like 'decision' that refers only to the final conclusion—extended the [executive's unreviewable] discretion to the action of determining" and not just the final determination). As we demonstrated in our earlier briefs, Congress did not provide for judicial review of Section 112(i)(4) determinations despite creating a comprehensive scheme of judicial

review in the Clean Air Act, and instead required only that the President report exemptions to Congress. Congress could have given exemption authority to EPA's Administrator, whose determinations would have been subject to judicial review under the Clean Air Act's arbitrary-and-capricious standard, *see* 42 U.S.C. § 7607(b)(1), (d)(9)(A), which is analogous to the standard under the APA. By contrast, the President's action here is not subject to review under the Clean Air Act or the APA, and his exercise of statutory authority is not reviewed for arbitrariness. Thus, in entrusting discretionary exemption authority to the President, Congress intended that judicial review of that discretionary decision would be unavailable.

Plaintiffs argue that, in Section 112(d)(6), 42 U.S.C. § 7412(d)(6), Congress distinguished "control technologies" from "practices, processes" and, thus, "technology" as used in 112(i)(4) cannot encompass practices and processes. Pls.' Opp'n at 11. However, Section 112(i)(4) uses the term "technology," not "control technologies." As Plaintiffs note, courts must presume that Congress intended a different meaning when it uses different language. *Loughrin v. United States,* 573 U.S. 351, 358 (2014). Notwithstanding, even if the Court were to agree (1) that the President's determination regarding the unavailability of technology is reviewable (which it should not); and (2) that Plaintiffs are correct in contending that some aspects of the HON Rule do not require what they deem is "technology," then to the extent relief is available (which we contend it is not, as discussed below), the Court should limit any relief to those aspects of the Rule.[4]

---

[4] Plaintiffs contend that Defendants have failed to dispute Plaintiffs' statement of undisputed material facts. That contention is false. As explained in our cross-motion and in our response to the Plaintiffs' statement of facts, the asserted "facts," which are almost exclusively EPA statements from the preamble to the HON Rule, are immaterial. The President is not bound by the Agency fact-finding requirements set out in the Clean Air Act or the APA in exercising authority under Section 112(i)(4). Rebutting the presumption of regularity would not change that

**III.    Plaintiffs Cannot Obtain the Relief They Seek.**

Defendants are entitled to summary judgment because the law bars Plaintiffs from obtaining the relief they seek. It is undisputed that Plaintiffs are challenging an action by the President—not a final EPA action—and, thus, EPA is not a proper party. Even if EPA were a proper party, which it is not, the Clean Air Act would have required Plaintiffs to sue the Agency in the court of appeals. Finally, and contrary to Plaintiffs' assertion, they cannot obtain the relief they seek against the President.

**A.    EPA Is Not a Proper Party.**

In their opposition, Plaintiffs fail to grapple with the United States' argument that EPA final actions can only be challenged in the circuit courts of appeals. Dkt. No. 59 at 9–10. While Plaintiffs are correct that the usual course for an ultra vires claim involving Presidential action is to enjoin a subordinate official, the United States is aware of no case (and Plaintiffs cite none) where a court allowed an ultra vires claim against an agency whose final actions are exclusively subject to challenge in the courts of appeals. Here, Congress has clearly stated that EPA's Clean Air Act actions may only be challenged under 42 U.S.C. § 7607, and Plaintiffs have not complied with that requirement. A court's inherent equitable authority cannot displace a valid act of Congress. *See Armstrong v. Exceptional Child Ctr., Inc.,* 575 U.S. 320, 327 (2015) ("The power of federal courts of equity to enjoin unlawful executive action is subject to express and implied statutory limitations"); *Miller v. French*, 530 U.S. 327, 339 (2000) (declining to invoke equitable authority that would run directly contrary to statutory language). Thus, the Court should reject Plaintiffs' claims against EPA.

---

fact; neither the Supreme Court nor the D.C. Circuit have ever in history sanctioned factual challenges to discretionary presidential determinations.

### B.    The Court May Not Order Relief Against the President.

Plaintiffs correctly concede that they cannot obtain injunctive relief from the President. Pls.' Opp'n at 20. But Plaintiffs continue to incorrectly assert that they can obtain declaratory relief against the President. *Id.* at 18. Plaintiffs are wrong.[5] Contrary to Plaintiffs' assertion, courts have routinely cautioned that declaratory relief against the President invokes separation of powers concerns. *Franklin*, 505 U.S. at 827 ("[D]eclaratory judgment against the President . . . is incompatible with his constitutional position that he be compelled personally to defend his executive actions before a court." (Scalia, J. concurring)); *Swan v. Clinton*, 100 F.3d 973, 976 n.1 (D.C. Cir. 1996) (identifying separation of powers issues raised by requests for declaratory relief against the President).

Plaintiffs continue to primarily rely on *Clinton v. City of New York*, 524 U.S. 417 (1998), which, as we previously discussed, is inapposite. First, *Clinton* did not examine whether a declaratory judgment could be issued directly against the President and, thus, should not be read to so hold. *See Cooper Indus., Inc. v. Aviall Servs., Inc.*, 543 U.S. 157, 170 (2004) ("Questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents") (quoting *Webster v. Fall*, 266 U.S. 507, 511 (1925)). Second, *Clinton* is distinguishable because other federal officials were properly named as defendants there, so any declaratory judgment was presumably issued against those defendants, not the President. *See City of New York v. Clinton*, 985 F. Supp. 168, 169 (D.D.C. 1998) (naming additional federal defendants). Third, *Clinton* is also

---

[5] Contrary to Plaintiffs' assertion, this argument is not forfeited; the United States raised the issue in its cross-motion for summary judgment, Dkt. No. 59 at 10–11. Moreover, this issue goes to redressability of Plaintiffs' claims and this Court's subject matter jurisdiction, which can be raised at any time. *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506 (2006).

distinguishable because the plaintiffs challenged the constitutionality of the statute authorizing the Presidential action, *Clinton,* 524 U.S. at 421, not a discretionary executive decision, *see Newdow v. Roberts*, 603 F.3d 1002, 1012 (D.C. Cir. 2010).

Plaintiffs fail to respond meaningfully to our arguments on these points. They quote a footnote in the *Clinton* decision describing the action as seeking declaratory relief, but they misleadingly insert "[against the President]" into the quote. Pls.' Opp'n at 19. Yet, in the body of the decision, the Court made clear that the action was "against the President *and other federal officials.*" *Clinton*, 524 U.S. at 425 (emphasis added). Here, however, as discussed above, no other proper party exists.

Next, *Clinton* is distinguishable because the Supreme Court found that the statute authorizing the President's action was unconstitutional. 524 U.S. at 421. It is for that precise reason that the D.C. Circuit distinguished *Clinton* from a suit seeking a declaratory judgment that a discretionary Presidential decision was invalid. *Newdow*, 603 F.3d at 1012. There, the court explained that "the declaratory judgment in [*Clinton*] struck down that statute and nullified the statutory power of the President. . . . [i]t was, in other words, a basic case of judicial review of legislation." *Id.* The court distinguished *Clinton* from the case before it that "challenge[d] no statutory power, but rather a decision committed to the executive discretion of the President," holding that "[a] court—whether via injunctive or declaratory relief—does not sit in judgment of a President's executive decisions." *Id.*

Here, Plaintiffs do not challenge the constitutionality of Clean Air Act Section 112(i)(4). Rather, as did the challengers in *Newdow*, Plaintiffs seek a declaratory judgment against the President for his discretionary act pursuant to the statute. Because no legitimate basis exists to distinguish *Newdow* from this matter, Plaintiffs sidestep it altogether and instead misdirect the

9

Court's focus to another flaw of the *Newdow* plaintiffs' case, i.e., that they sought injunctive and declaratory relief against future presidents. Pls.' Opp'n at 19. But the D.C. Circuit's analysis on that point was separate from its analysis distinguishing the case before it from *Clinton*. *See Newdow*, 603 F.3d at 1012.

Additionally, Plaintiffs' reliance on *National Treasury Employees Union v. Nixon (NTEU)*, 492 F.2d 587, 591 (D.C. Cir. 1974), is misplaced. Pls.' Opp'n at 20. There, the court issued a "declaratory decree" requiring President Nixon to perform a ministerial act under the Federal Pay Comparability Act. *NTEU*, 492 F.2d at 616. In doing so, the D.C. Circuit distinguished between discretionary acts and ministerial ones. *Id.* at 590 ("[T]he President is invested with certain important political powers, in the exercise of which he is to use *his own discretion*, and is accountable only to his country in his political character and to his own conscience") (quoting *Marbury v. Madison*, 5 U.S. 137, 154 (1803) (emphasis added)). Only after finding that the President's challenged act was ministerial (not discretionary) did the court hold that judicial review and declaratory relief was available. *Id.* at 603 ("[N]or is this a case involving a statute pursuant to which discretion extends to a final construction by the officer of the statute he is executing. . . . [T]he duty imposed upon the President by the statutes involved in this case is one which is clearly prescribed . . . .") (internal and citations quotations omitted). Even so, in issuing the declaratory relief, the court "confine[d] [itself] to a declaration of the law, that is, that the President has a constitutional duty" to issue the pay raises mandated by the statute, noting that the court had "restrict[ed] [itself] . . . to show the utmost respect to the office of the Presidency and to avoid, if at all possible, direct involvement by the Courts in the President's constitutional duty faithfully to execute the laws and any clash between the judicial and executive branches of the Government." *Id.* at 616.

10

Since the Supreme Court's decision in *Franklin*, 505 U.S. at 802-03, the D.C. Circuit has questioned whether *NTEU* is still good law, but even if it were, declaratory relief would be limited to claims that the President failed to perform a ministerial act. *See Swan*, 100 F.3d at 977-78. Thus, even assuming *NTEU* remains good law, it is irrelevant here because Plaintiffs do not allege that the President failed to perform a ministerial duty.

Plaintiffs' reliance on *Knight First Amendment Institute at Columbia University v. Trump*, 302 F. Supp. 3d 541, 580 (S.D.N.Y. 2018), *vacated on appeal as moot consistent with Biden v. Knight First Amendment Inst. at Columbia Univ.*, 141 S. Ct. 1220 (2021), is also unavailing. In that case, the plaintiffs sued the President and other federal officials alleging that the President's action blocking them on Twitter based on their political viewpoints was proscribed by the First Amendment. *Id.* at 550. The district court agreed and, in evaluating the appropriate remedy, reasoned that "the correction of an *unconstitutional act* far more closely resembles the performance of 'a mere ministerial duty,' where 'nothing [is] left to discretion,' than the performance of a 'purely executive and political' duty requiring the exercise of discretion vested in the President. *Id.* at 578 (quoting *Mississippi v. Johnson*, 71 U.S. (4 Wall). 475, 499 (1866)) (emphasis added). Thus, even though the district court awarded declaratory relief in *Knight*, it is distinguishable from this case for the same reasons described above: (1) as in *Clinton*, other federal officials were defendants in *Knight*, including the White House Social Media Director and Assistant to the President, who assisted in operating the Twitter account, and the declaratory relief was presumptively issued against them, *see id.* at 553; and (2) the court viewed the challenged unconstitutional executive action as ministerial, not discretionary. *Id.* at 579. Neither of those circumstances exists here.

11

Finally, declaratory relief in this matter would not redress Plaintiffs' claims. *Contra* Pls.' Opp'n at 20. As we explained in our summary judgment motion, even if the Court were to issue a declaratory judgment in this action, the Court does not have the authority to compel EPA to enforce the 2024 HON Rule because "an agency's exercise of its prosecutorial discretion cannot be subjected to judicial scrutiny." *Citizens for Resp. & Ethics in Wash. v. FEC*, 892 F.3d 434, 439 (D.C. Cir. 2018) (citing *Heckler v. Chaney*, 470 U.S. 821, 831 (1985)). Plaintiffs claim that a declaratory judgment would redress their injury because they could seek to enforce the HON Rule through Clean Air Act citizen suits. Pls.' Opp'n at 20. But a declaratory judgment binds only the parties to the lawsuit; it does not bind third parties. *See Haaland v. Brackeen*, 599 U.S. 255, 293 (2023). Thus, a declaratory judgment has only res judicata, not precedential, effect. *See id.* In other words, a declaratory judgment would not preclude third parties to this case from relying on the exemptions. "Without preclusive effect, a declaratory judgment is little more than an advisory opinion." *Id.* And the Supreme Court has made clear that, while such an opinion could have "possible, indirect benefit in a future lawsuit," that benefit is insufficient to demonstrate Article III redressability. *Id.* at 294.

## CONCLUSION

For all the foregoing reasons, as well as those in Defendants' Cross-Motion for Summary Judgment, the Court should enter summary judgment in favor of Defendants.

Respectfully submitted,

ADAM R.F. GUSTAFSON
Principal Deputy Assistant Attorney General
ROBERT N. STANDER
Deputy Assistant Attorney General
Environment & Natural Resources Division

CHARLOTTE M. GOUDEAU
Assistant Regional Counsel
EPA Region 6 Office of Regional
Counsel
Dallas, Texas

*/s/ Laura J. Brown*
DANIEL J. MARTIN
LAURA BROWN
U.S. Department of Justice
Environment & Natural Resources Division
Environmental Defense Section
P.O. Box 7611
Washington, D.C. 20044
(202) 598-1869 (Martin)
(202) 305-5314 (Brown)
Daniel.Martin3@usdoj.gov
Laura.J.S.Brown@usdoj.gov